Good morning again, your honors. Charlotte Kaiser on behalf of the United States. May it please the court, boil down, even though the United States made several arguments within its brief, boil down what this case comes down to is that Mr. Skafferty could not show that he had a plausible ground of relief under the outstanding and unusual equities analysis, given the fact that he was a multiple drug trafficking felon with also a firearms offense. And under the litany of cases that the United States filed, the fact that he simply had a family and he had residency in the United States is not, is insufficient to overcome that. He had this serious criminal, this serious drug crime, and in fact, drug possession can count on that alone. Courts have applied that just simply for drug possession. But in this case, the defendant had three drug trafficking offenses, including cocaine, and heroin, and his most recent being marijuana trafficking, and that was a federal court offense. He had four drug possession offenses, two of which involved heroin, one of which involved cocaine. And in addition to that, he had the firearms offense, and there was nothing on the record to show any rehabilitations. His criminal record had spanned from 1991, when he had been in the United States for ten years, all the way to 2006, when he was convicted. And that standard should be applied, whether it's 212C relief, adjustment of status, voluntary departure, what have you. And to make matters of concern is the fact that, while this court does give De Novo a review, we would note that the district court, when it made this, when it analyzed this case, it only gave passing reference to this heightened standard, and simply just said that the defendant should have had an opportunity to present his case, and may be subject to this standard. But the court did not address this standard, perform the analysis to determine whether or not the defendant had met this plausible ground. And in fact, what the court erroneously had determined was because the immigration judge had found the defendant eligible for 212C relief, that he could demonstrate it, when in fact, as the record had showed, the immigration judge only found that the defendant had been eligible for such relief. The immigration judge had never granted such relief. The next issue that was of concern... At the time that the immigration judge first of all said he was eligible for 212C relief, and later was talking to him about whether he was married and whether he could have a visa and so on, were these various facts developed before the IJ? I.E., his criminal record in particular. I think it was. It was, yes, because first of all, the order to show cause was premised on the 1991 convictions of cocaine and heroin trafficking. And also, as part of the once the immigration judge thought that he may be eligible for such relief, the government attorney chimed in and said, I don't believe so based on his subsequent criminal history. And that's when the immigration judge gave the government an opportunity to continue the matter, to file an additional ground of inadmissibility. And while the additional ground of inadmissibility was based on the fact that he had this firearms conviction, in fact, in that document, where they charged the additional ground of inadmissibility, they included, or deportability I should say in this case, because he was an firearm after conviction of a violent felony. It is, I do not recall, I think it's unclear on the record as to whether or not he was before the court. He was before the court because he had recently had the marijuana trafficking conviction. I don't know if it was explicit in front of the court, but it's inferred that that's why he was there, because he went from federal custody into immigration custody. He was on a reopened case. He was on a reopened case. So it was reopened for all purposes as the immigration judge made clear, so the immigration judge could take into account his entire criminal history. He didn't have to just look back at when the order to show cause was in 1992, and he only had the heroin and cocaine drug trafficking convictions. He didn't have to look at it in a vacuum. However, even those convictions alone, just even one, is sufficient to trigger the unusual or outstanding equities, and bottom line, his defendant had more than, in 2006, 2007, when he had the immigration hearings, 2007, he had more than seven such convictions that would trigger that application of the standard. And again, there's a whole litany of cases which this court has applied such standard, most notably Gonzalo v. Valerio, which was in fact a government appeal of the granting of a 13-20-60, and it made very clear that when the court had analyzed the equities, the court had not applied the outstanding and unusual equities, and in that case... I'm sorry? Did the government tell the judge, the district court judge? We, the government? Yes, we briefed it extensively, and we included it, I believe, in one of our surreplies at one point. This is a very interesting case litigation-wise, because the original motion was filed by the defendant's third attorney, Mr. Rexrode, and the defendant's third attorney, Mr. Valerio, filed the 13-20-60, and then by the time his fourth attorney came on, the fourth attorney is the one who filed, created, raised new arguments in the reply brief, and that is what warranted the United States to file the surreplies in its brief to explain not only did the defendant not meet the 212C relief, but he also did not meet adjustment of status, and the standard that should be applied is the outstanding and unusual equities. But you only have to show one, right? Because the petitioner needs to show both in order to get the relief, is that right? Oh, the petitioner meaning had to show 212C relief and adjustment of status? And adjustment, yes. That, to be honest, at this point, seems to be a bit of a gray area in light of Julong. At the time that the immigration judge was analyzing the case, Julong had not been decided, and the fact that the defendant had a subsequent firearms conviction basically created the bar to his ability to apply for 212C relief. However, Julong came along and said, this is a comparis rule, and the question is, does it apply to the defendant? Does it apply to the defendant? Does it apply to the defendant? Does it apply to the defendant? Does it apply to the defendant? Well, if it does apply, then essentially it's just simply that he cannot show a plausible grant of 212C relief. Because he wouldn't need a visa, but he'd still need the waiver. He'd still need the waiver. Now, of course, there is the second argument. This leads to the second argument of whether the defendant could have been a common-law marriage. There was a point of contention also within this, in which the defendant said, by the time he got his fourth attorney, and it was raised in the reply brief by this fourth attorney, is, I've been in a common-law marriage all along. And the district court said, well, there are these facts that show that essentially he could have raised it. But, again, as this court has stated in Lopez-Velasquez, which is an en banc decision, the immigration judge need only advise forms of relief, which are apparent from the record. And the record is replete with indications where the immigration judge says, well, is your wife a U.S. citizen? My fiancée is. My kids are. And then in a subsequent hearing, is your wife or kids a hearing? My kids are. And then he later retorts, well, my kids are. And he talks about his fiancée. And even at one point in, I think, the initial hearing with the immigration judge from 2007, he says, well, can my fiancée apply for a visa? And the immigration judge says explicitly, you are not married. And then what happens is, that is in 2007. And in 2012, this is a declaration saying, oh, well, we've always held ourselves out as husband and wife. And here are these credit cards and stuff. When he's finally subject to prosecution under 1326 charge, and he's facing a substantial amount of time, that's when it's finally getting raised with this common-law marriage, when they never referred to each other as husband and wife. And, in fact, a letter, defense had indicated, oh, there were all these letters submitted to the immigration court in support of the fact how he supported his family. And none of those letters were before the district judge. But we addressed one of those letters before the district judge. And as the letter noted, this fiancée had said in the letter to the immigration judge, we were in a committed relationship. And what's also interesting to note is the fact that she said, well, we've been in that relationship since April 2000. Well, in September 2000, the defendant gets his controlled substance possession arrest, and he gets convicted for what appears to be nine months. And then in 2004, he gets arrested for marijuana trafficking. And he's in custody until his release to INS. He's in federal custody in terms of a Bureau of Prisons until his release to INS. And he's in federal custody until his release to INS. He's in federal custody until his release to INS from that point. So that just makes the matters of further concern and suspicion. What exactly was his record at the time of the IJ hearing? The record was three drug trafficking convictions. That's what, misdemeanor felonies? Those were felonies. They were all felonies. Cocaine and heroin from 1991. And it appears that that might have been a jury verdict. But cocaine and heroin, which he had given a sentence of anywhere from 18 to 36 months. And at that time in 1991, he also had convictions for cocaine and heroin possession. Then in 1999, he had mitigated dispositions for theft, making terroristic threats. In 2000, he had a controlled substance possession conviction. It is not exactly clear from the record what that was, but he did receive nine months. In 2003, he had a whole litany of convictions, which included heroin possession, marijuana possession. So I noticed in the district court papers that the defendant's lawyer said that he had had mainly misdemeanors or entirely misdemeanors, but that's not true. That's not true. He had a very serious record, and we made that before. The court had multiple hearings on this case, given the fact that there were all these filings and different attorneys. The defendant was basically, if he wasn't satisfied with one attorney, he would go to the next. So four attorneys of the span of over two years. And he had a very serious record. By the time in the reply brief where he raised these new arguments, we felt imperative on our part to file a surreply and to specifically point out yet again what this criminal history was. The district court, in fact, did review the defendant's criminal history as part of the fact pattern. The district court actually gave a fairly solid fact pattern. But the problem is that once applying the facts to the law, the district court had initially indicated that the immigration judge determined that the defendant was eligible for 212 relief, but then later on the court concluded that the immigration judge actually originally granted 212C relief. And the district court also erred where it said, where it made the passing reference that the defendant just didn't, should have been given an opportunity to present his forms of relief, even if, you know, and be aware of the fact that there was a heightened standard. And that's just, that's just not how. They're way over your time. Oh, I'm sorry. Thank you, Your Honor. Thank you very much. Good morning, Your Honor. William Bergener on behalf of the appellee in this matter. May it please the Court. I would like to indicate initially that this is really the province of the district court judge. Judge Huston made quite an extensive review. Why is it the province of the district court judge? I'm sorry. To make those factual determinations. But the one thing he never made a factual determination on is the plausibility of getting the relief, did he? Your Honor, I don't think he was, that was necessary at that time because the IJ judge made an erroneous determination. You're just wrong about that. That's just not the law. So if that's your argument, then. Well, that's not my entire argument, Your Honor. I'm sorry? That's not my entire argument. Well, then what, what, do you have any authority for that argument? That doesn't matter whether or not there was plausible relief as long as the IJ made a mistake? No, Your Honor. I think that there are grounds that there were possible plausible relief that needed to be explored by the IJ judge before he made any determination of deportation. Right. What is the legal standard? Are we supposed to look at whether it was plausible or are we supposed to say the IJ made a mistake and that's it? Your Honor, you may look at both, you may look at both of those in a combination, but with a large emphasis on the fact that once the IJ judge made a mistake, there was no further exploration of whether there was a plausible grounds of relief. That would be something that would have to have been fleshed out in a IJ, in a administrative hearing as to those grounds. Mr. Scheffery was never even given that opportunity to. Well, that's a nice and interesting rule, but I don't think it's the one that we have in our case. We have the hearing for the District Court and we have now, where you have an opportunity to marshal the arguments that Mr. Scheffery arguably didn't have the opportunity to make to the IJ. Looking at his criminal record, he's got a lot of weight on the other side of the scale. What's on your side of the scale? Your Honor, family, kids, common law, marriage, long-standing residence in the United States since 1981, all American citizens. Those are the strong points that in Mr. Scheffery's side and those are the points that under the two cases that are cited of the Ninth Circuit cases that would have been allowed in these special circumstances to be explored as to the plausibility of his ability to stay in the United States. And conceivably, because it's a matter of discretion at that level, the IJ could have found that Mr. Scheffery met those grounds and could have offered him the appropriate relief. So we said in Gonzalez-Valerio that long-term residence in the United States and strong family ties are not sufficient to demonstrate outstanding equities when there's a serious criminal history. Is there a case that you can point to that is more supportive of your position here? Nothing that I haven't cited at this point in time, Your Honor. Your Honor, the district court judge made these findings and left open the issue of plausible relief and that would have been something that could have been developed at an administrative hearing given the opportunity. Now, whether he would have been granted that relief or not granted that relief would be something... Is there anything to develop other than what you've already identified? Not too much, Your Honor. I understand you're saying if the IJ had gone into that subject, there'd be more on the record, but you've got the opportunity to tell us what could have been developed. Well, Your Honor, we would have shown the common law of marriage. We would have shown the... Well, see, on that one in particular, I pause because when your client was asked in so many words, court, IJ, are you married? Answer, no. Well, how is the IJ supposed to be clairvoyant in figuring out that he wasn't married but he in fact was under a common law marriage if that fact isn't in front of the IJ? And I think that's one of the points that the district court judge made was that there was sufficient information in the record for the IJ to make further inquiry. What's the information that was in the record when the defendant says, are you married? No. That he had children, that he had been living with his common law wife for seven, eight years or the length of the relationship. These could have been things that would have triggered in Pennsylvania and IJ's... experienced IJ's inquiry as to that other facts should be developed. And that's one of the issues in this matter, Your Honors, is that once the IJ has made a determination that you have no... that I have to... mandatory deportation, suddenly the conversation is closed, the inquiry is closed and the IJ... Isn't that always the case with a collateral attack? I mean, the whole point is you're making a collateral attack on an Israeli proceeding that's closed and done and you're saying for some reason it was invalid and then you have a chance of showing that you would have been prejudiced had the IJ not erred. Well, Your Honors, those were developed by a colleague before me in the pleadings and found to be very persuasive in that determination. I know it's a difficult matter given his record, but at the same time the due process considerations are paramount in this matter and I think the Court should give those... address those due process considerations in making its determination to uphold Judge Houston's determination in this case. If there are any further questions...  Thank you, Your Honors. The case of United States v. Skaffrey is submitted.
judges: Berzon, Clifton, Ikuta